IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA .

| | |
|---|---|
| STATE NATIONAL INSURANCE CO.,<br>INC., | :<br>:<br>: |
| Plaintiff, | :  CIVIL ACTION NO. 14-607 |
| | :<br>: |
| v. | :<br>: |
| DALE LANDIS and JOHN LANDIS, as | : |
| Administrators and Persons Representing | : |
| the ESTATE OF CHARLES L. LANDIS, | : |
| DUSTON LEWIS, VINCENT | : |
| MASTNDREA, JUNE JOHNSON, | : |
| KEVIN JOHNSON, WILLIAM | : |
| JOHNSON, and J & B HOTEL, INC., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

Smith, J.                                                                                    January 15, 2015

This case is of a common variety: an insurance company seeks a declaration that it owes

neither a duty to defend nor a duty to indemnify a business entity and certain individuals in an

underlying state court action. Before any proceedings of substance on the merits have taken

place, the court *sua sponte* raises the question of whether the court should decline to exercise

jurisdiction under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202. In response,

the parties agree that this case raises purely state-law issues, although they disagree about the

impact of the state court action on the instant matter. While these observations, standing alone,

help frame the mechanism of resolution, they do not exhaust it. For what ultimately is required

is a synthesis of these observations, among others, within the context of understanding the scope

of federal power. Undertaking such a synthesis, the court applies recent Third Circuit precedent

to conclude that the court should indeed decline to exercise jurisdiction over this matter and dismiss the complaint.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

On January 27, 2014, the plaintiff, State National Insurance Co., Inc., filed a complaint against the defendants, Dale Landis and John Landis, as administrators and persons representing the estate of Charles L. Landis, Duston Lewis, Vincent Mastandrea, June Johnson, Kevin Johnson, William Johnson, and J & B Hotel, Inc., in which it advances a single claim for declaratory relief in connection with an action currently pending in the Court of Common Pleas of Lancaster County. Compl. at ¶¶ 16, 25-27, Doc. No. 1. That action, commenced on October 4, 2012, and docketed at CI-12-14795, involves allegations that the defendant, Duston Lewis ("Lewis"), struck, and eventually ran over, Charles Landis ("Landis") with his car while intoxicated. *Id.* at Ex. A, Am. Compl. After receiving treatment at Lancaster General Hospital, Landis died on January 5, 2012. *Id.* The controlling complaint in state court asserts various state statutory and common law claims against Lewis, the corporation operating the establishment at which Lewis consumed alcoholic beverages, namely J & B Hotel, Inc., and numerous purported agents of that corporation, including Vincent Mastandrea, Kevin Johnson, William Johnson, and June Johnson, and seeks compensation for Landis's death. *Id.*

As is common in the insurance industry, the plaintiff filed the instant complaint in federal court for the sole purpose of obtaining a declaration pursuant to the DJA that it does not owe a duty to either defend or indemnify the defendants, Vincent Mastandrea, Kevin Johnson, William Johnson, June Johnson, and J & B Hotel, Inc., in the underlying state court litigation under an insurance policy issued to J & B Hotel, Inc. for the policy period of May 2, 2011, to May 2, 2012. Compl. at ¶¶ 15, 20, 25-27. More specifically, the plaintiff contends that it owes no such

2

duties because the allegations surrounding the state court action fall squarely within the confines of two policy exclusions, namely a liquor liability exclusion and an assault and battery exclusion. *Id.* at ¶¶ 21-23.

After the plaintiff effectuated service,[1] the defendants, Vincent Mastandrea, Kevin Johnson, William Johnson, and J & B Hotel, Inc. (the "Hotel Defendants"), filed an answer to the complaint on February 26, 2014. Answer of the Defs. Vincent Mastandrea, Kevin Johnson, William Johnson, and J & B Hotel, Inc., Doc. No. 4. The defendants, Dale Landis and John Landis, as administrators and persons representing the estate of Charles L. Landis (the "Estate Defendants"), filed an answer to the complaint shortly thereafter. Answer and Affirmative Defenses of Defs. Dale Landis and John Landis as Adm'rs and Perss. Representing the Estate of Charles L. Landis to Compl. for Declaratory J., Doc. No. 5. Chief Judge Petrese B. Tucker transferred this matter from the Honorable Lawrence F. Stengel to the undersigned on May 2, 2014. Order, Doc. No. 7.

On June 27, 2014, and after conducting a review of the complaint, the court issued an order to show cause inviting the parties to brief the question of whether the court should decline to exercise jurisdiction over this matter given both the discretionary nature of the DJA and the recent holding of *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014). Order to Show Cause, Doc. No. 9. The court set a briefing schedule and scheduled oral argument to occur in conjunction with the initial pretrial conference on August 12, 2014. *Id.*

The plaintiff filed its response on July 9, 2014, in which it argues that the court should exercise jurisdiction over this matter in part because the underlying state court action does not

---

[1] After examining the proofs of service, it unfortunately appears that June Johnson died several years before the commencement of the instant action. Proofs of Service, Doc. No. 3. Consequently, no attorney has entered an appearance on her behalf. It likewise appears that counsel has not entered an appearance on behalf of Lewis. Despite being served, Lewis has filed neither a counseled nor a *pro se* response to the complaint. The court need not comment on the implications of such a failure given the ultimate decision rendered.

3

constitute a parallel state proceeding. Pl.'s Resp. to June 27, 2014, Order to Show Cause ("Pl.'s Resp.") at 4-5, Doc. No. 10. Employing substantially similar reasoning, both sets of defendants filed responses on July 24, 2014, in which they separately request that the court decline to exercise jurisdiction over this case. Answer of the Defs. Vincent Mastandrea, Kevin Johnson, William Johnson, and J & B Hotel, Inc. to Rule to Show Cause ("Answer of Hotel Defendants"), Doc. No. 11; Defs.' Br. in Opp'n to Pl.'s Resp. to Order to Show Cause ("Answer of Estate Defendants"), Doc. No. 12. Though the response of the Estate Defendants covers more ground in breadth and depth than that of the Hotel Defendants, neither response directly challenges the plaintiff's characterization of the underlying state court action as something other than a parallel proceeding. Answer of Hotel Defendants at 2-4; Answer of Estate Defendants at 7-9.

The court held oral argument on August 12, 2014, and the jurisdictional issue is ripe for disposition.

## II.     DISCUSSION

### A.     Governing Analytical Framework

#### 1.     Background

The DJA provides that a jurisdictionally-competent federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Through the vehicle of establishing a remedy, Congress textually carved out a sphere of discretion into an otherwise "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."[2] *Colo. River Water Conservation Dist. v. United States*,

___

[2] The plaintiff invokes the diversity statute, 28 U.S.C. § 1332, as the basis for subject-matter jurisdiction. Compl. at ¶ 3. The plaintiff is a citizen of Texas. *See Easy Corner, Inc. v. State Nat'l Ins. Co.*, No. 14-1053, 2014 WL 5510319, at *1 n.1 (E.D. Pa. Nov. 3, 2014). To establish complete diversity, the complaint attempts to make out that the defendants are citizens of Pennsylvania by alleging their addresses and residences. Compl. at ¶¶ 5-12. The amount in controversy exceeds $75,000. *Id.* at ¶ 13. Although the complaint does not lend itself to a definitive conclusion that subject-matter jurisdiction is proper because allegations of residency are insufficient to establish citizenship, the court proceeds to the DJA analysis, as a non-merits ground for dismissal that is properly raised *sua*

4

424 U.S. 800, 817 (1976) (citations omitted). In other words, the "statute's textual commitment to discretion" vests federal courts with "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citations omitted). While "the Supreme Court has . . . framed DJA discretion in broad terms," it has also made the point that a court's exercise of that discretion "is bounded and reviewable." *Reifer*, 751 F.3d at 139-40. Determining the precise boundaries of DJA discretion, then, has been a lively topic of judicial inquiry for, at minimum, the last seventy years.

Although undergirded by the common theme that a court's exercise of DJA discretion must be "sound and reasoned," the controlling standard to be applied has evolved over time and has recently culminated into a rebuttable presumption analysis informed by a multi-factor balance test. *See id.* at 139-40, 146 (observing this theme, but taking it through various rhetorical iterations). Beginning with *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), a case involving pending state garnishment proceedings, the Supreme Court described the district court's duty under the circumstances presented as an ascertainment of "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 495. The Court described this duty against the theoretical backdrop of avoiding "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.* In implementing this duty, the Court instructed that lower courts may be required to survey "the scope of the pending state court proceeding and the nature of defenses open there," including "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding,

*sponte*, given the fact that it is "hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999); *see Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 n.22 (3d Cir. 2014) (recognizing that district courts may raise this issue *sua sponte*); *see also Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) (stating that allegations of residency are insufficient to establish citizenship for purposes of diversity (citation omitted)).

5

whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* The Court cautioned, however, that its holding could not be read to foreclose the possibility that a court may be required to consider additional, or possibly wholly different, factors in the exercise of its DJA discretion in other cases. *See id.* (noting that the holding was not an attempt to comprehensively enumerate the factors bearing on a court's exercise of DJA discretion).

Approximately fifty years later, the Court confirmed the vitality of "the *Brillhart* standard to the *Brillhart* facts" in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and, in doing so, drew out the essence of DJA discretion in rather capacious terms. *Id.* at 286; *see Reifer*, 751 F.3d at 139 (stating that the Supreme Court has generally "framed DJA discretion in broad terms" (citation omitted)). After analyzing the facts of *Brillhart* and the development of abstention post-*Brillhart*, the Court reaffirmed that "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than" in actions potentially amenable to abstention.[3] *Wilton,* 515 U.S. at 286. The propriety of declaratory relief in any given case, the Court went on, is to be "informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287 (internal

---

[3] Although the court has seen *Brillhart* and *Wilton* characterized as creating an abstention doctrine, neither *Brillhart* nor *Wilton* explicitly classified it as such. *See United States v. Com. of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1074 (3d Cir. 1991) (stating that "[w]e have previously made clear that a dismissal appropriate under the broader standard of the Declaratory Judgment Act should be effected without resort to the more limited doctrine of abstention" (citation omitted)); *see, e.g., Med. Assurance Co. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010) (noting that the use of the phrase "abstention" to describe the workings of *Brillhart* and *Wilton* is "not entirely accurate"). Instead, these two cases drew the concept of discretion from the DJA itself. *See Brillhart*, 316 U.S. at 494 (citing to the "Federal Declaratory Judgments Act" (citation omitted)); *Wilton,* 515 U.S. at 286 (highlighting the word "may" in the text of the DJA (citations omitted)). The modern day concept of abstention, on the other hand, tends to refer to a creature of judge-made law. *See, e.g., Hellman*, 610 F.3d at 378 (stating that the term "abstention" generally "refers to a group of judicially-created doctrines"). This distinction is important, and in part may explain the disparity in the scope of discretion given to courts under the DJA as opposed to under abstention doctrines, because it is arguably more palatable for Congress, as the jurisdiction-creating entity, to qualify a court's exercise of the jurisdiction properly before it. *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981) (observing that "[w]e have always recognized that federal common law is subject to the paramount authority of Congress" (internal quotation marks and citation omitted)).

6

quotation marks and citation omitted). And again, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. Against this broad language, and as with *Brillhart*, the Court was careful to limit its holding, leaving for another day a delineation of the "outer boundaries of [DJA] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Id.* at 290.

## 2.   *Reifer*

That day arrived, albeit not at the Court, when the Third Circuit decided *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014), and clarified the contours of DJA discretion by providing district courts with a uniform and comprehensive approach to resolving questions of jurisdiction when litigants request the remedy of a declaratory judgment.[4] *See id.* at 137, 146 (stating the court's intent to "clarify this area of the law" and provide "a uniform approach" for addressing this issue). *Reifer* picked up where *Brillhart* and *Wilton* left off in terms of framing the issue presented as one that required the court to address the "outer boundar[y] of a district court's discretion under the DJA, specifically whether a district court may decline jurisdiction over a declaratory judgment action when there are no parallel state proceedings." *Id.* at 137 (internal quotation marks and citation omitted). The court tackled this question, and through it reaffirmed the Supreme Court's teachings as to the core cases of DJA discretion—namely cases involving the presence of parallel state proceedings—by establishing a framework, comprised of two, interlocking parts, for trial courts to apply to core and outer boundary cases alike. *See id.* at 143 (breaking down its analysis into a resolution of two issues: "(1) the effect on a district

---

[4] As in *Reifer* itself, the instant case does not require the court to opine on the standard to be applied when a court is facing a "mixed claim" for relief, or a claim requesting both declaratory and coercive relief. *See id.* at 135 n.5.

court's DJA discretion of the absence of pending parallel state proceedings, and (2) assuming the district court maintains discretion in such circumstances, the scope of that discretion").

The first part of the analysis takes the form of a rebuttable presumption scheme, with the presence or absence of parallel state proceedings serving as the fulcrum. *See, e.g.*, *1100 Adams St. Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 14-2203 SDW, 2014 WL 5285466, at *7 (D.N.J. Oct. 15, 2014) (suggesting that the presence of a parallel state action triggers a "presumption" against jurisdiction); *Owen v. Hartford Ins. Co.*, No. 14-924 RBK/JS, 2014 WL 2737842, at *7 (D.N.J. June 17, 2014) (citation omitted) (same). As stated in pure form:

> [T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.

*Reifer*, 751 F.3d at 144-45. In other words, the absence of pending parallel state proceedings creates a rebuttable presumption in favor of jurisdiction unless good reasons exist for overriding this presumption. In converse, the presence of pending parallel state proceedings creates a rebuttable presumption against jurisdiction unless, again, good reasons exist for overriding this presumption.

The second part of the *Reifer* analysis, in turn, is devoted to guiding a court's discretion in determining whether to override the applicable presumption. *See id.* at 145-47 (laying out factors to guide a district court's discretion when considering whether the presumption should be given dispositive weight (footnotes and citations omitted)). This part of the analysis takes the form of a multi-factor balance test, the application of which "should be articulated in a record

8

sufficient to enable" effective appellate review. *Id.* at 147. In addition to considering the

*Brillhart* standard (articulated above), courts should begin this part of the analysis by considering

the following factors, to the extent relevant:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146. As the circumstances dictate, courts may also be required to consult additional

guideposts, such as whether federal interests would be served by hearing the matter in federal

court[5] and whether a state forum is better suited to deal with any state-law issues.[6]

## 3. Parallel State Proceedings

Of critical importance to the *Reifer* analysis, then, is a determination of whether an

underlying state court action constitutes a "parallel state proceeding" capable of triggering a

rebuttable presumption against jurisdiction. *See id.* at 144 (agreeing with other circuit courts that

---

[5] The Third Circuit in *State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (2000) observed a "limiting factor" to DJA discretion: district courts do "not have open-ended discretion to decline jurisdiction over a declaratory judgment action when the issues include[] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding." *Id.* at 134 (citation omitted). *Reifer* confirmed that, to the extent applicable, courts should continue to consider this factor. *See Reifer*, 751 F.3d at 146 n.23 (citation omitted).

[6] Not only did *Summy* recognize a "limiting factor" to DJA discretion when federal interests are in the mix, but it also recognized a somewhat analogous principle when uniquely state interests are ripe to be vindicated: courts should exercise restraint "in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled." 234 F.3d at 135 (footnote and citation omitted). *Summy* also suggested that the exercise of restraint is amplified when "the state law is firmly established." *Id.* at 136. The Third Circuit later interpreted *Summy* to stand for the unitary proposition that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003) (citation omitted). Again, *Reifer* confirmed that, to the extent applicable, courts should continue to consider this guidance as well. *See Reifer*, 751 F.3d at 147.

"the existence or non-existence of pending parallel state proceedings" deserves "increased emphasis" (citations omitted)). Although the text of the DJA does not answer this question, both *Brillhart* and *Wilton* provide some initial insight. In *Brillhart*, the Court classified the pending state garnishment proceeding as a proceeding "pending in a state court in which all the matters in controversy between the parties *could* be fully adjudicated."[7] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) (emphasis added). In determining whether the issues presented in the federal suit "can better be settled in the proceeding pending in the state court," the Court emphasized that the district court should have considered whether some aspect of state procedural or substantive law foreclosed the ability to vet those issues in the state proceeding. *See id.* at 495-96 (observing that the district court "did not consider whether, under applicable local law, the claims sought to be adjudicated by the respondent in this suit for a declaratory judgment had either been foreclosed by Missouri law or could adequately be tested in the garnishment proceeding pending in the Missouri state court"). In a similar vein, *Wilton* characterized the pending state court action as "parallel proceedings, presenting *opportunity* for ventilation of the same state law issues." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995) (emphasis added). Taken together, *Brillhart* and *Wilton*, with their focus on potentiality as opposed to present circumstance, appear to give the term "parallel state proceedings" a broad sweep, presumably to ensure that federalism concerns are not trumped by a race to the courthouse.

The Third Circuit has also suggested such a broad sweep. In *Atlantic Mutual Insurance Co. v. Gula*, 84 F. App'x 173 (3d Cir. 2003), the court reviewed a district court's declination of jurisdiction over a declaratory judgment action filed by an insurance company, an action in which the company sought a declaration of non-coverage with respect to claims presented in

---

[7] The Third Circuit referenced this quotation in *Reifer*. 751 F.3d at 137 n.9.

10

underlying state tort actions. *See id.* at 174. The insurance company argued that the district court had erred, in part, because the related state court action did not "expressly deal with the issne of coverage" that was raised in the federal action. *Id.* at 175. The court disagreed that this asymmetry counseled in favor of retaining jurisdiction because "even if the coverage issue is not currently pending, it will as a matter of logic necessarily arise before the matter is concluded in state court." *Id.* Although the court admittedly did not write this language in direct response to the question of whether the underlying state tort action constituted a "parallel state proceeding," the court did write this language in conclnding that the first *Summy* factor had been met, namely "[a] general policy of restraint when *the same issues are pending in state court.*" *Id.* at 174-75 (emphasis added) (citation omitted).

Read in tandem, *Gula* squares nicely with *Brillhart* and *Wilton* in understanding a "parallel state proceeding" for purposes of DJA discretion as a currently-engaged state court action that is competent as a matter of state procedural and substantive law to allow full adjudication of all matters raised in the federal action. As *Brillhart* itself stated, courts "may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). In making this determination, courts will have to consult applicable state law.[8] *See id.* at 495-97 (asserting that the district court should have consulted Missouri law to answer the above

---

[8] This analysis may, in part, resemble that which a court is required to undertake when determining whether a pending state proceeding "provides an adequate opportunity to raise federal challenges" under *Younger* abstention. *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014) (citation omitted). In making this determination, courts are to "consider whether state law raises procedural barriers to the presentation of the federal challenges." *Id.* at 184 (citations omitted). So too here, except the court is to focus the inquiry on the claims raised in the federal action, regardless of whether they arise under federal or state law. *See Brillhart*, 316 U.S. at 495 (stating that a court "should ascertain whether the *questions in controversy between the parties to the federal suit*, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court" (emphasis added)).

11

questions). Viewed in this way, *Gula*'s import might best be viewed as a statement that garnishment proceedings typically provide an adequate opportunity under Pennsylvania law to test coverage issues surrounding underlying tort actions that are likely to be raised in federal declaratory judgment actions. *See Scottsdale Ins. Co. v. Broaddus*, No. 08-3241, 2009 WL 349697, at *5 (E.D. Pa. Feb. 11, 2009) (effectively reading *Gula* for this proposition).

## B. Analysis

Situated within the context of the above discussion, a proper analysis of this case may begin, but cannot end, with considering the parties' respective positions. For the most part, the parties hit the main talking points. While the plaintiff places great stock in the fact that the underlying Lancaster County action does not, in its view, constitute a parallel proceeding, both sets of defendants point to the nature of the decisional law to explain why this fact does not necessarily mandate the retention of jurisdiction. Pl.'s Resp. at 3-5; Answer of Hotel Defendants at 2-3; Answer of Estate Defendants at 8-11. All parties suggest that a ruling in their favor best serves the interests of judicial economy and party convenience. Pl.'s Resp. at 5; Answer of Hotel Defendants at 3-4; Answer of Estate Defendants at 10-11. The parties' analyses do not, however, manage to explain how these points fit together to come to any sort of principled conclusion as to how the court is to exercise DJA discretion. A full appreciation of *Reifer*, on the other hand, provides the tools necessary to understand how these points do fit together and, further, what a principled conclusion entails.

In coming to that conclusion, the court must first determine whether the underlying action currently pending in Lancaster County constitutes a parallel proceeding. As best as the court can discern, the plaintiff argues that the underlying state action does not constitute a parallel proceeding because the coverage issues have not been raised in state court and certain defendants

12

in this action have opposed the plaintiff's request to intervene in the state court action. Pl.'s Resp. at 4-5. There is no indication that either set of defendants disagrees with this proposition. Answer of Hotel Defendants at 2-4; Answer of Estate Defendants at 8-10. The court, unfortunately, must respectfully disagree.

As seen above, the operative inquiry is whether Pennsylvania law renders the Lancaster County action procedurally and substantively competent to adjudicate the coverage issues raised in the instant action. As *Gula* suggests, the answer to this question is that it does.[9] To conclude that the Lancaster County action is not a parallel proceeding for the reasoning advanced by the plaintiff would stand to eviscerate *Brillhart* and *Wilton*'s undeniable focus on the potentiality of the state action. *See, e.g., 1100 Adams St. Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 14-2203 SDW, 2014 WL 5285466, at *5 (D.N.J. Oct. 15, 2014) (stating that "the state court action and the declaratory judgment action need not be strictly parallel (i.e., presenting identical claims and involving identical parties) in order for a district court to find that abstention under the DJA is warranted" (citation omitted)); *Owen v. Hartford Ins. Co.*, No. 14-924 RBK/JS, 2014 WL 2737842, at *6 (D.N.J. June 17, 2014) (stating that "even where a coverage issue is not yet pending in an underlying litigation, and an insurance carrier is not presently a party there,

---

[9] Under Pennsylvania law, "garnishment, or attachment execution as it was formerly known, is a viable remedy for a judgment creditor to collect its judgment from the judgment debtor's insurer." *Bianco v. Concepts 100, Inc.*, 436 A.2d 206, 208 (Pa. Super. 1981). With respect to the Pennsylvania Rules of Civil Procedure, "[t]he defendant insurer is a garnishee within the meaning of Rule 3101(b) defining a garnishee." *Helms v. Chandler*, 223 A.2d 30, 31 (Pa. 1966). In other words, "[w]here a defendant, insured under a policy of liability insurance, has been found liable to a plaintiff for damages arising from a covered loss, the contract of insurance operates to create a debt in the amount of the judgment, owed by the insurer to the insured. Thus, the insurer both owes a debt to the defendant and has property of the defendant in his possession which is subject to attachment/garnishment by the plaintiff." *Brown v. Candelora*, 708 A.2d 104, 107 (Pa. Super. 1998) (citations omitted). Substantively, when an insurer is brought into court in this manner, it retains "every right of defense that it would have had to a common-law action brought by the assured directly on the policy." *First Nat. Bank v. Maikranz*, 44 Pa. Super. 225, 227 (1910). The Pennsylvania Rules of Civil Procedure provide the procedural vehicles for testing coverage issues in the garnishment proceedings. *See, e.g.*, Pa.R.C.P. No. 3111 (service); Pa.R.C.P. No. 3142 (preliminary objections); Pa.R.C.P. No. 3145 (further procedures). Quite poignantly, the Superior Court has analogized a garnishment proceeding as "much like a declaratory judgment action." *Freestone v. New England Log Homes, Inc.*, 819 A.2d 550, 553 (Pa. Super. 2003).

abstention is appropriate where the coverage issue will as a matter of logic necessarily arise at some point in the state proceeding" (internal quotation marks and citation omitted)). As those cases teach, it is the potentiality of the state court proceeding, rather than its present composition, that allows the court to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S. at 495. Because the Lancaster County action has the potential to encompass the issues currently raised in this action, it is a parallel proceeding and the court, therefore, employs the applicable *Reifer* presumption in favor of declining jurisdiction.[10]

Turning to the second part of the *Reifer* analysis, the court finds that the rebuttable presumption against jurisdiction is conclusive because there are no countervailing factors present capable of overriding it. At this point, the plaintiff is left to argue that the court should exercise jurisdiction because "[i]t is beyond reasonable dispute that [a] federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy, that there is a public interest in settlement of the uncertainty of obligation and that there will be no meaningful inconvenience to the parties if the declaratory judgment action is heard in federal court." Pl.'s Resp. at 5. Even assuming these statements to be true, the court finds that they are not enough to rebut the presumption against jurisdiction. For one thing, they must be weighed against the fact that the coverage issues are restricted to state law.[11] For another, the force of these factors, in the

---

[10] The same result would occur even if the court did not employ a rebuttable presumption against jurisdiction and instead conducted a comprehensive balancing test, placing an increased emphasis on the presence or absence of parallel state proceedings. *See Reifer*, 751 F.3d at 144 (3d Cir. 2014) (agreeing that although parallel state proceedings are only but one factor to be considered, they deserve "increased emphasis" (citations omitted)).

[11] Both sets of defendants have argued that the coverage issues may present novel or unsettled questions of state law. Answer of Hotel Defendants at 2-3; Answer of Estate Defendants at 8-9. Although the court does not, because it need not, rely on this characterization of the coverage issues to ultimately decide this case, this argument, assuming it true, would call for heightened restraint on behalf of the court. *See State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) (opining that "district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases, although we do not mean to confine its relevance to that category").

14

form presented by the plaintiff, does not approach the type of force necessary to overcome the controlling presumption.[12] The plaintiff points to no other factor that would warrant such an override and the court can locate none. The controlling presumption thus stands and the court declines jurisdiction.

## III. CONCLUSION

Contrary to the parties' arguments, this case does not require the court to reach the outer boundaries of DJA discretion. Rather, this case presents classic circumstances for employing sound and reasoned discretion to decline jurisdiction and lends credence to the notion that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000). Accordingly, the court declines to exercise jurisdiction under the DJA and dismisses this matter without prejudice.

An appropriate order follows.

BY THE COURT:



EDWARD G. SMITH, J.

---

[12] In *Reifer*, the court's ultimate holding turned on the fact that the "lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised." *Reifer*, 751 F.3d at 148. The court found that "Reifer's argument implicate[d] the policies underlying Pennsylvania's rules governing attorney conduct, which are promulgated by the Pennsylvania Supreme Court" and, therefore, that argument was "best decided in the Pennsylvania court system because it directly raise[d] a matter peculiarly within the purview of that state's highest court." *Id.* at 149 (footnote and citations omitted). This type of showing, specific as it is and narrowly tailored to implement fundamental concerns underlying DJA discretion, seems a far cry from stating in conclusory terms that concerns of judicial economy and party convenience would best be served by exercising jurisdiction.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE NATIONAL INSURANCE CO., INC., | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 14-607 |
| v. | : : : | |
| DALE LANDIS and JOHN LANDIS, as Administrators and Persons Representing the ESTATE OF CHARLES L. LANDIS, DUSTON LEWIS, VINCENT MASTNDREA, JUNE JOHNSON, KEVIN JOHNSON, WILLIAM JOHNSON, and J & B HOTEL, INC., | : : : : : : : : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 15th day of January, 2015, the court having issued an order to show cause on June 27, 2014, in which the court *sua sponte* raised the issue of declining jurisdiction over this insurance coverage matter under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and invited the parties to brief this issue (Doc. No. 9); and the court having considered the parties' responses to the order to show cause laying out their respective positions (Doc. Nos. 10-12); and the court having heard argument on this jurisdictional issue on August 12, 2014; accordingly, for the reasons set forth in the accompanying memorandum opinion and in the sound and reasoned exercise of the court's discretion, it is hereby **ORDERED** as follows:

1. The complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**; and

2. The clerk of court is **DIRECTED** to mark this matter as **CLOSED**.

BY THE COURT:



EDWARD G. SMITH, J.